IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| DEBORAH M. STAPLETON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:16-CV-251 |
| | § | |
| NANCY A. BERRYHILL, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
TO REVERSE THE DECISION OF THE COMMISSIONER**

Plaintiff DEBORAH M. STAPLETON brings this cause of action pursuant to 42 U.S.C. §

405(g) seeking review of a final decision of defendant NANCY A. BERRYHILL, Acting Commissioner

of Social Security (Commissioner), denying plaintiff's applications for Disability Insurance Benefits

(DIB) and Disabled Widow's Benefits (DWB). Both parties have filed briefs in this cause. For the

reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the

Commissioner's decision finding plaintiff not disabled and not entitled to benefits be REVERSED.

I.
ADMINISTRATIVE PROCEEDINGS

A. Application and Initial Determinations

On July 25, 2012, plaintiff, who was 57 years old, filed applications for social security disability

benefits alleging she had become unable to work on July 15, 2010 due to the following conditions:

degenerative disc disease of the lumbar spine, daily migraines, high blood pressure, anxiety and

depression.  (Tr. 224-32; 233-39; 349).  Medical records dating from 2007-2015 were submitted in support of plaintiff's claims of disability.

In a Disability Report dated August 13, 2012, plaintiff advised she has a 12th grade education, and received training and worked in the field of cosmetology.  (Tr. 350).  Plaintiff indicated she "owned and operated a convenience store" from 2001 - July 15, 2010, working 10 hours a day/ 7 days a week, where she "worked the cash register, stocked shelves, ordered and kept inventory, completed the books and payroll, cleaned, organized, [and] hired and fired employees." (Tr. 350-51).  Plaintiff indicated this job required her to use machines, tools or equipment, use technical knowledge or skills, write or complete reports, and supervise 3-5 other people.  She described the job as requiring extensive walking, standing, sitting, reaching, and writing, typing or handling small objects, as well as requiring frequent lifting of up to 10 pounds, with the heaviest weight lifted being 50 pounds.  (Tr. 351).

In a Function Report completed September 10, 2012, plaintiff advised she lives alone and watches TV most of the day, has no problem with her personal care, does not need help or reminders taking medication, and is able to prepare small meals, do some inside household chores, drive a car, shop alone for groceries, perform financial obligations, read, socialize, and attend doctor appointments alone.  (Tr. 364-67).  Plaintiff advised she can walk 2-3 blocks before needing to stop and rest, has no problems paying attention or finishing what she starts, is able to follow spoken instructions better than written instructions, and is able to handle changes in routine but does not handle stress well, tending to get a headache.  (Tr. 368-69).

On November 29, 2012, the Social Security Administration denied plaintiff disability benefits finding her condition was not severe enough to keep her from working and, based on her description of her job as an owner/operator of a convenience store, she had the ability to perform that type of work as she had described it.  (Tr. 74-98).

In a subsequent Disability Report, plaintiff alleged that as of August 25, 2012, an additional condition, to wit:  arthralgia in her hands, and the resultant stiffness, pain, and inability to maintain a firm grip, also precludes her from working.  (Tr. 371).  Plaintiff advised that as a result of uncontrolled blood pressure, she is not able to stand without feeling dizzy and weak, cannot walk down stairs, and becomes short of breath when she walks too far.  Plaintiff also advised that as a result of the arthralgia, she is not able to hold a pen in her hand for longer than 30 minutes.  Plaintiff averred treatment for the blood pressure and hand joint pain had not been effective.  (Tr. 374).  On April 18, 2013, the Social Security Administration denied benefits upon reconsideration.  (Tr. 99-128; 129-36).

### B.  <u>Administrative Hearing</u>

On February 13, 2015, an Administrative Law Judge (ALJ) held an administrative hearing via video conference to consider plaintiff's applications for disability benefits.  (Tr. 35-72).  Prior to the hearing, plaintiff submitted two (2) third-party statements stating plaintiff, although the co-owner of the convenience store, did not work at the store or perform any operational or managerial duties at the store. (Tr. 432-38).

In her opening statement, plaintiff's representative noted her "key concern" with the case was the incongruency in the records concerning plaintiff's past relevant work (PRW), arguing that despite the statements made in the August 13, 2012 Disability Report, plaintiff had simply "owned" the convenience store and worked for a short time as a part-time cashier at the store, but had never "managed" or "operated" the store or had set hours or set responsibilities so as to acquire substantial work skills.  (Tr. 41-43).

Plaintiff, who was 59 years old at the time of the video hearing, testified concerning her impairments and the limitations caused by such impairments.  (Tr. 48-61).  A vocational expert (VE)

also testified at the hearing.  Based on the job description given in the August 13, 2012 Disability Report, the VE identified plaintiff's only PRW as an "owner/manager" of a convenience store and classified such work as light, as generally performed, but performed by plaintiff at the medium exertional level as described in the Disability Report.  (Tr. 65).  When the ALJ posed a hypothetical to the VE of an individual limited to light work who also needs to avoid work above shoulder level, the VE opined that such an individual could perform plaintiff's PRW as it was generally performed at the light exertional level, but not at the medium exertional level performed by plaintiff as described in the August 13, 2012 Disability Report.  (*Id*.).  The VE testified such an individual would have skills transferrable to sedentary exertional level jobs, such as a telephone answerer or solicitor.  (*Id*.).

Prior to cross-examination of the VE, plaintiff's representative clarified that plaintiff did not recall completing the August 13, 2012 Disability Report that set out the description of PRW relied on by the ALJ and the VE.  (Tr. 66-67).  On cross-examination, the VE acknowledged an individual "limited to standing and walking less than two hours in an eight-hour workday" due to "pathology to their spine" and "neuropathy in their feet," or an individual "limited in their ability for pushing and pulling, grasping, and handling to . . . less than two and a half hours a day" and only able to "do fine fingering and manipulation [] up to two and a half hours a day" due to pain and swelling in the hands, could not perform plaintiff's PRW.  (Tr. 67-68).  The VE also acknowledged an individual "limited to sitting for less than two hours out of an eight-hour day" could not perform plaintiff's PRW or the sedentary exertional level jobs the VE had identified.  (Tr. 68).  The VE further acknowledged that if an individual were "off task 20 percent of the time" due to frequent, severe pain or as a result of emotional issues such as depression, such an individual would not be able to maintain a regular assignment or sustain a regular work schedule.  (Tr. 69-70).  The VE also acknowledged that if an individual were absent from work three days per month due to an exacerbation of physical or mental

symptoms, such an individual could not sustain a regular work schedule.  (Tr. 70).

At the close of the VE's testimony, plaintiff's representative again noted the description of plaintiff's PRW set forth in the August 13, 2012 Disability Report was not accurate, noting the medical records describing plaintiff's limited work history and previously submitted statements of individuals who attested plaintiff did not perform the work as described in the Disability Report.  (Tr. 71-72).

After the hearing, plaintiff submitted additional third-party statements, as well as her own statement and that of her disability representative, averring plaintiff, although the co-owner of the convenience store, did not work at the store or perform any operational or managerial duties at the store, and vehemently disputing the accuracy of the August 13, 2012 Disability Report stating she performed all managerial and work duties material to the operation of the convenience store.  (Tr. 440-50). Plaintiff argued that as she did not have any past relevant work, and no transferrable skills to light or sedentary work, the Grids would direct a finding of disability whether plaintiff retained the RFC for either light or sedentary work.

## C. ALJ's Decision

On June 26, 2015, the ALJ rendered an unfavorable decision, finding plaintiff had "not been under a disability within the meaning of the Social Security Act at any time through the date of [his] decision." (Tr. 17).  The ALJ found plaintiff had not engaged in substantial gainful activity since July 15, 2010, the alleged onset date.  (Tr. 19).  The ALJ determined plaintiff had the following severe medical impairments:  "scoliosis and spondylosis of the thoracic spine, degenerative disc disease of the lumbar spine, status post remote cervical surgery, and obesity," and discussed plaintiff's impairments

that he found to be non-severe.[1]  (19-21).  The ALJ found plaintiff's impairment or combination of impairments did not meet or medically equal the severity of any listed impairment.  (Tr. 22).

The ALJ found, "[a]fter careful consideration of the entire record," that plaintiff retained the residual functional capacity (RFC) – the most an individual can still do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks – to perform light exertional work with the limitation that she "should avoid work above shoulder level."  (Tr. 22).  The ALJ stated that in making this finding, he had considered all symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, and had also considered opinion evidence in accordance with the requirements of the regulations and various Social Security Rulings.  (Tr. 23).

The ALJ summarized plaintiff's hearing testimony, and stated that in addition to this testimony, he considered the function reports and pain questionnaire completed by plaintiff.  (*Id.*)  The ALJ stated he read and considered the third-party function reports completed by plaintiff's sister and a friend, but did not give their reports "any real weight" because they were inconsistent with the objective medical evidence.  (*Id.*).

The ALJ found, "[a]fter careful consideration of the evidence," that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely credible."  (*Id.*).  The ALJ noted that having found plaintiff's obesity to be a severe impairment, he considered plaintiff's weight, including the impact on her ability to ambulate as well as on her other body systems, within the functional limitations determined in his decision.  (*Id.*).  The

---

[1]The ALJ found plaintiff's impairments of dysthymia (depression), pain disorder, and hypertension, as well as her history of thyroidectomy and bilateral carpal tunnel syndrome - status post release, do not significantly limit plaintiff's ability to do basic work activities.

ALJ found the records did not support that plaintiff's musculoskeletal impairments are as severe as alleged, noting her lengthy history of treatment for back pain reflected generally mild findings regarding the lumbar and thoracic spine. (*Id.*). The ALJ further noted records of plaintiff's past cervical fusion reflected the surgery was generally successful in treating her related symptoms, and after addressing plaintiff's pain management medical records from 2007-2011, determined plaintiff's symptoms were not as limiting as alleged and were generally well-controlled with treatment. (Tr. 24-25). The ALJ noted doppler studies of plaintiff's lower extremities in April 2011 revealed venous insufficiency in both legs, but no evidence of deep vein thrombosis and only slight edema. (Tr. 25). The ALJ also observed that medical records from mid-July 2011 found cellulitis in the lower extremity but a second doppler study again showed no evidence of thrombosis, and plaintiff exhibited a normal gait and muscle strength with no focal motor deficits. (*Id.*). The ALJ noted plaintiff reported joint swelling in her hands and feet in late 2011, but that examination revealed only mild swelling and no neurological deficits. (*Id.*).

The ALJ noted plaintiff presented to Dr. Robert Bidwell for a new patient visit on August 22, 2012 with complaints of ongoing chronic joint/hand pain. (*Id.*). The ALJ found there was no evidence plaintiff was taking any prescription pain medications at the time and examination revealed normal muscle tone and gait with no neurological deficits or edema, and treatment consisted of a recommendation that plaintiff take a glucosamine supplement and Tylenol as needed. (*Id.*). The ALJ found examinations from July 2011 - August 2012 revealed generally normal objective musculoskeletal findings. (*Id.*).

The ALJ stated that on October 19, 2012, plaintiff reported activities of daily living (ADLs) of being able to dress and care for personal hygiene, prepare laundry, make her bed daily, throw the trash out, prepare basic meals, shower on her own, and handle finances. (*Id.*). The ALJ found these reported

ADLs, together with the generally normal objective musculoskeletal findings upon examinations, diminish plaintiff's credibility.  (*Id*.).

The ALJ remarked that plaintiff's November 13, 2012 consultative exam revealed plaintiff had a steady gait, normal muscle strength, good grip, no atrophy, and could sit, stand, move, lift, handle and carry objects but could not heel-toe walk, hop, squat or tandem walk, but used no assistive devices. (*Id*.).  X-rays of the lumbar spine during the consultative exam revealed only minimal narrowing and degeneration at L5-S1 and retrolisthesis at L5 over S1 but was otherwise normal.  (Tr. 25-26).  The ALJ further mentioned medical records from November 2012 - May 2015, finding examinations continued to be generally normal and that plaintiff had reported her pain was well controlled most of the time with prescription medicine, but that it was noted plaintiff walked slowly and reported she could not raise her arms very high.  (Tr. 26).  The ALJ found the medical record did not show further surgical intervention was warranted and that plaintiff was only treated conservatively which generally controlled plaintiff's symptoms.  Consequently, the ALJ determined plaintiff had diminished credibility regarding the severity of symptoms and limitations alleged, especially as her symptoms did not appear to worsen at the time of her alleged onset date and she reported they had even improved.  (*Id*.).

The ALJ also addressed plaintiff's claims of ongoing difficulty with leg swelling, the limited treatment and time of treatment for this condition, and the generally normal findings but for plaintiff's slightly slow gait since March 2013.  The ALJ found that, "[g]iven the above evidence in its entirety," plaintiff could perform light exertional level work activity but that, due to her past cervical fusions and reports of being unable to raise her arms very high, she should avoid work above shoulder level.  (*Id*.).

In addressing the opinion evidence of record, the ALJ noted the RFC assessments of the non-examining State agency medical consultants completed on November 28, 2012 and April 17, 2013, *viz*., that plaintiff had the capacity to perform medium exertional level work, but afforded such opinions

"little weight" because the record showed plaintiff had a previous cervical fusion and it was "more reasonable she would be reduced to light exertional work and [should] avoid work above the shoulder level due to the fusion, findings of degenerative disc disease of the thoracic/ lumbar spine and obesity." (*Id*.). The ALJ, however, gave "great weight" to the non-examining State agency medical consultant opinions that plaintiff's mental health impairments were nonsevere "as there was minimal treatment in [plaintiff's] file regarding her mental health and the majority of examinations showed generally normal mental status findings" and their opinions were consistent with mental status testing showing no evidence of memory or concentration deficits and plaintiff's activities of daily living.[2] (Tr. 27).

The ALJ noted Dr. Bidwell completed a medical source statement on July 8, 2014, restating the doctor's opinions regarding plaintiff's physical limitations, as well as his opinions that plaintiff would not be able to work "a job 8 hours a day on an ongoing basis, without significant accommodations and/or frequent unscheduled days off," and that plaintiff "would be absent from work consistently more than 3 days a month." (*Id*.). The ALJ then cited the relevant provisions of the Code of Federal Regulations, noting such regulations "state, in pertinent part, that treating source opinions are given controlling weight if they are well supported by medically acceptable clinical and diagnostic techniques and are not inconsistent with the other substantial evidence of record." (*Id*.).

The ALJ then held a "review of Dr. Bidwell's records do not support his opinion." Referencing his previous discussion, the ALJ noted almost all of Dr. Bidwell's examinations of plaintiff resulted in generally normal musculoskeletal findings, with no neurological deficits and normal gait, muscle strength and tone, with the exception of a finding of a slightly slow gait starting in March 2013, which did not result in any treatment plan recommendation to use an assistive device to ambulate. (*Id*.). The

---

[2]The ALJ noted a medical vocational allowance statement in the State agency findings that was inherently inconsistent with the ultimate finding that plaintiff's mental impairments were nonsevere and gave the allowance statement "no weight."

ALJ noted Dr. Bidwell's notes continued to reflect plaintiff had no neurological deficits and normal muscle strength/tone, and that mental status examinations performed on plaintiff by Dr. Bidwell were generally normal with the exception of a notation that plaintiff had a mildly flat affect on occasion. (*Id*.). The ALJ also noted plaintiff reported to Dr. Bidwell that her pain was well controlled most of the time on medications. (*Id*.). Noting administrative issues, such as what an individual's residual functional capacity is or whether the individual is disabled, are issues for the Commission to exclusively decide, the ALJ found that after carefully considering Dr. Bidwell's opinion, he did not give it "great weight" because "it is in conflict with Dr. Bidwell's own treatment records, is not well supported by medically acceptable clinical and laboratory techniques and is inconsistent with the other substantial evidence as noted above." (Tr. 27-28).

The ALJ stated he did not discount all of plaintiff's complaints, finding the evidence demonstrated medically determinable impairments; however, none were severe enough to prevent plaintiff from participating in substantial gainful activity, given the RFC for light exertional level work with the limitation to avoid work above shoulder level. (Tr. 28). The ALJ concluded that "[g]iven the objective medical evidence of record," plaintiff's RFC was reasonable and that plaintiff "could function within those limitations without experiencing significant exacerbation of her symptoms." (*Id*.).

The ALJ found plaintiff is capable of performing her past relevant work (PRW) as an owner-manager (convenience store). (*Id*.). The ALJ noted that at the hearing, plaintiff maintained she had no past relevant work as she "was merely paid as an owner of the convenience store but did not work there." (*Id*.). The ALJ found this testimony was directly contradicted by the August 13, 2012 Disability Report wherein plaintiff reported she was the owner/operator of a convenience store from 2001 to July 15, 2010 and worked the cash register, stocked shelves, ordered and kept inventory, completed the books/payroll, cleaned, organized and hired/fired employees. The ALJ acknowledged the Disability

Report was not signed or dated by plaintiff, but noted plaintiff testified she had a face-to-face interview at the Social Security office when completing her application for disability and that, although she testified she did not recall reporting any work information at that time, it was "reasonable" that plaintiff "would have been the only person with such extensive personal knowledge regarding her job duties, impairments and physician information that was provided on the form." (*Id*.). Finding the post-hearing statements provided by the two (2) prior employees at plaintiff's convenience store were not persuasive, the ALJ found plaintiff did perform work in the store and had PRW as an owner-manager of a convenience store. (Tr. 29).

The ALJ, noting the VE's testimony that an owner-manager of a convenience store is a skilled, light exertional level job, which plaintiff performed at the medium exertional level, found that, based on his RFC finding, plaintiff could perform her PRW as it is generally performed. (*Id*.). The ALJ specifically found plaintiff had not been under a disability, as defined in the Social Security Act, from July 15, 2010 through the date of his decision. (*Id*.).

After entry of the ALJ's decision, plaintiff's representative challenged, *inter alia*, the ALJ's finding that plaintiff performed past relevant work as the manager of a convenience store, again arguing plaintiff did not have any past relevant work as demonstrated by witness statements and references in the medical record and, due to her advanced age, the Grids directed a finding of disabled even if plaintiff were limited to a light RFC as found by the ALJ. (Tr. 452-57).

Upon the Appeals Council's denial of plaintiff's request for review on September 24, 2016, the ALJ's determination that plaintiff was not under a disability during the relevant time period became the final decision of the Commissioner. (Tr. 1-3). Plaintiff now seeks judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g).

II.

MEDICIAL RECORDS

A.  Pre-Disability Application Treating Sources

As set forth in detail in plaintiff's brief (pp. 3-5), medical records dated October 2007 to April 2011 reflect plaintiff was treated by a D.O. and an anesthesiologist for pain management, regarding complaints of lower back, neck, leg and joint pain, toe cramping, and mild edema of the left foot and ankle and hands.

B.  Post-Disability Application Treating Source - Dr. Bidwell

On August 22, 2012, after applying for disability benefits in July 2012 (alleging an onset date of July 15, 2010), plaintiff presented for an initial visit to Dr. Robert Bidwell, a family medicine practitioner, with complaints of aching head and joint pain.  Musculoskeletal and neurological findings were normal, as was a rheumatoid arthritis factor test.[3]  Dr. Bidwell's diagnostic impression was "arthralgia" and plaintiff was advised to take a glucosamine supplement and Tylenol as needed.  (Tr. 564-72).

On November 26, 2012, plaintiff presented to Dr. Bidwell again with complaints of aching pain in her head, left knee and joints.  Review of all systems for plaintiff's complaints of joint pain revealed normal findings, including a normal gait, muscle tone and strength and no edema.  With regard to plaintiff's "unchanged" arthralgia, Dr. Bidwell noted plaintiff "[n]eeds improved pain control" and prescribed a pain reliever.  (Tr. 578-80).

On March 25, 2013, plaintiff presented to Dr. Bidwell for a "follow-up of arthralgia."  At the visit, plaintiff reported her pain was "well controlled most of the time" but that she "sometimes" had

---

[3]Although plaintiff's sedimentation rate indicated it was elevated, the normal range for women is 0 - 29 mm/hour rather than the 0.0 - 20.0 reflected in the medical record.  https://www.mayoclinic.org/tests-procedures/sed-rate/about/pac-20384797

to take the prescribed pain reliever every four instead of six hours.  Upon examination, Dr. Bidwell noted plaintiff "[w]alks slightly slowly - chronic," but found normal muscle tone and strength and no edema.  Assessing plaintiff's arthralgia as unchanged, Dr. Bidwell increased the strength and amount of plaintiff's prescribed pain reliever.  (Tr. 668-70).

On June 24, 2013, plaintiff presented to Dr. Bidwell for a follow-up visit during which she complained of depression and expressed she "[w]ould like to re-start" an anti-depressant "she took for one year immediately after her husband's death."  Dr. Bidwell's examination notes again reported "[w]alks slightly slowly - chronic," but found normal muscle tone and strength and no edema.  Dr. Bidwell identified depression and hypertension, both unchanged, as plaintiff's problems and prescribed the anti-depressant requested by plaintiff.  (Tr. 665-67).

On September 30, 2013, plaintiff presented to Dr. Bidwell for a follow-up visit for her hypertension.  Plaintiff denied any current pain, but complained of right ear and throat pain, shortness of breath, numbness of a toe, and a knot on the back of her head.  Examination and review of systems was essentially normal, although Dr. Bidwell's notes again included the notation, "Walks slightly slowly - chronic," but normal muscle tone and strength, and no edema.  Dr. Bidwell identified plaintiff's problems as depression, unchanged and controlled, and arthralgia, unchanged, and continued plaintiff on her current medications.  (Tr. 661-63).

On January 7, 2014, plaintiff presented to Dr. Bidwell for a follow-up visit to include an impaired fasting glucose (IFG) test for prediabetes.  At this visit, plaintiff advised she was currently experiencing aching lower back pain.  Examination and review of systems was essentially normal; however, Dr. Bidwell continued the notation, "Walks slightly slowly - chronic," and again found normal muscle tone and strength and no edema.  Dr. Bidwell identified plaintiff's problems as hypertension and hyperlipidemia, both unchanged, ordered an IFG test, and continued plaintiff's medication regimen.

(Tr. 656-59).

On July 8, 2014, plaintiff presented to Dr. Bidwell for a follow-up visit post-IFG testing. During this visit, plaintiff complained of current "sharp" pain, quantified as the "worst possible pain" as a 10 on a scale of 1 to 10, in her lower back present for more than six (6) months, numbness to both feet, and a depressed mood. Bidwell noted plaintiff was "applying for Social Security benefits as she is unable to work due to her health problems," that plaintiff had brought him a form to fill out, that "we have done so," and that plaintiff had an attorney helping her with the process. Dr. Bidwell noted plaintiff's complaints of back and joint pain, a burning sensation in her feet, and of depression and her desire to increase her anti-depressant. Examination was essentially normal but with a continuation of the notation, "Walks slightly slowly - chronic." Muscle tone and strength were again normal, and there was no edema. Bidwell identified plaintiff's primary problem as "back pain, lumbar, chronic," but unchanged, and continued plaintiff's current medications. (Tr. 690-94).

Dr. Bidwell completed the form referenced in his medical notes, a "Physical Medical Source Statement,"[4] contemporaneously with plaintiff's July 8, 2014 exam. In that statement, Bidwell stated he had treated plaintiff for "hypertension, prediabetes, hyperlipidemia, arthralgia, chronic back pain, depression & neuropathy." (Tr. 687-88).

Dr. Birdwell opined the maximum weight plaintiff could lift/carry was less than 10 pounds and only "occasionally" (up to 2.5 hours per day); that she could not likely perform overhead lifting; that she could "seldom" (much less than 2.5 hours per day) reach, push/pull, grasp/ handle, or use her feet for repetitive movement of foot controls; and that she could only "occasionally" (up to 2.5 hours per day) perform "fingering/fine manipulation." (*Id.*)

---

[4]A "residual functionality assessment which sets forth, in the physician's opinion, the physical limitations of a Social Security benefit applicant." *Qualls v. Astrue*, No. 08-60901 (5th Cir. 2009).

Dr. Bidwell opined plaintiff could only stand and/or walk for less than 2 hours in an 8-hour workday, explaining she could only walk 10 feet "without pain or limits," but noting plaintiff did not require any type of assistive device for ambulation.  Bidwell opined plaintiff could only sit for less than 2 hours in an 8-hour workday, although he failed to explain how long plaintiff could likely sit in any one continuous period of time.  (*Id*.)

Dr. Bidwell opined plaintiff could "never" climb, kneel, crouch, crawl or stoop, and could only "seldom" balance.  As "objective findings" supporting his assessment, Bidwell stated:  "Pain with bending & stooping.  Generalized joint pain."  Bidwell opined plaintiff's pain was "severe," *i.e.*, it "would preclude the activity precipitating the pain," and was "frequent" in spite of medical treatments including pain medication.  Bidwell noted plaintiff tolerated her current "Norco" pain medication well when advising as to any side effects of plaintiff's pain medication.  As for any other limitations of which he was aware, Bidwell added that plaintiff "suffers from depression."  (*Id*.)

Dr. Bidwell opined that even if plaintiff complied with treatment, she would not be able to present to a job, 8 hours a day, on an ongoing basis, without significant accommodations and/or frequent unscheduled days off due to her limiting impairments.  Bidwell opined that plaintiff's impairments were likely to produce "good days" and "bad days" and estimated that, on average, plaintiff would "consistently," *i.e.*, more than 3 days per month, "be absent from work or significantly impaired regarding her activities of daily living" as a result of her impairments or treatment.  Finally, Bidwell confirmed plaintiff's impairments had lasted, or could be expected to last, at least 12 months, and opined that plaintiff's prognosis was "poor/guarded."  (*Id*.)

On September 23, 2014, plaintiff presented to Dr. Bidwell with complaints of aching pain in her arms for a week that hindered her ability to raise her arms "very high."  Examination and review of systems was essentially normal; however, Bidwell continued the notation, "Walks slightly slowly -

chronic," and again found normal muscle tone and strength and no edema. Dr. Bidwell identified plaintiff's problem as "arthralgia," unchanged, continued plaintiff's medication regimen, recommended gentle massage, low heat, and over-the-counter pain relief cream to the affected area, and ordered testing that showed a normal rheumatoid arthritis factor but revealed an elevated sedimentation rate. (Tr. 712-17).

On April 2, 2015, plaintiff presented to Dr. Bidwell for a follow-up visit for her hypertension, but asserted complaints of current sharp pain in her back, hips, legs and joints present for more than six (6) months, and respiratory flu-like symptoms. Examination and review of systems was again essentially normal but for the continued notation, "Walks slightly slowly - chronic." Muscle tone and strength were normal and there was no finding of edema. Dr. Bidwell identified plaintiff's problem as hypertension and continued plaintiff on her medications. (Tr. 734-43).

### C. Examining Source - Dr. Burgesser

On November 13, 2012, plaintiff presented to Dr. Mary F. Burgesser, a physical medicine and rehabilitation practitioner, for a one-time consultative examination. Dr. Burgesser reported as plaintiff's current complaints: migraine headaches, "pain in her spine," and insomnia. Dr. Burgesser recorded plaintiff's height as 5' 10" and weight as 286 pounds, and her review of all systems was negative but for migraine headaches, degenerative disc disease, and insomnia. Neurological examination was also normal except that sensory examination showed "diminished sensation to pin in the stocking glove distribution." Dr. Burgesser's diagnostic impression was "[m]igraines, degenerative disc disease, insomnia." With regard to plaintiff's capabilities, Dr. Brugesser opined plaintiff can "sit, stand, move about, lift, handle, carry objects, hear and speak. She can button clothes and pick up a pen. She can walk with a steady gait, but cannot heel-toe walk, hop, squat, or tandem walk. [S]he does not use an

assistive device." (Tr. 558-59). A lumbar X-ray of the same date revealed "slight" or "minimal" narrowing and degeneration at the L5-S1 disc, and retrolisthesis of L5 over S1, but, otherwise, normal disc spaces and a normal lumbar spine. (Tr. 561).

### D.  Non-Examining Sources - Drs. Kwun and Herman

On November 28, 2012, Dr. Jeanine Kwun, a non-examining state agency medical consultant, reviewed plaintiff's medical records and found plaintiff had one "severe" physical impairment, to wit: Degenerative Disc Disease. (Tr. 79, 91). Dr. Kwun opined plaintiff could: "occasionally" ("cumulatively 1/3 or less of an 8 hour day") lift and/or carry, including upward pulling, 50 pounds, and "frequently" ("cumulatively 1/3 up to 2/3 of an 8 hour day") lift and/or carry, including upward pulling, 25 pounds; could stand and/or walk with normal breaks, or sit with normal breaks, for about 6 hours in an 8-hour workday; could frequently climb ramps or stairs, but never ladders or scaffolds; had no limitations on balancing; could occasionally stoop or crouch; and could frequently kneel or crawl. (Tr. 82-83, 93-94).

On April 17, 2013, Dr. Roberta Herman, a non-examining state agency medical consultant, reviewed plaintiff's medical records and confirmed the opinions of Dr. Kwun. (Tr. 105, 107-08, 118, 121).

### III.
### ISSUE RAISED

In a single point of error, plaintiff asserts the acting Commissioner's decision denying plaintiff Social Security disability benefits should be reversed because:

> The ALJ committed reversible legal error by failing to give the proper consideration to the opinions of plaintiff's treating physician.

IV.
STANDARD OF REVIEW

"Failure to adhere to the procedures proscribed by the Social Security regulations is generally sufficient grounds for reversal and remand of an administrative decision." *Beltran v. Berryhill*, 2017 WL 4167513 (N.D. Tex. June 20, 2017) (quoting *Alejandro v. Barnhart*, 291 F.Supp. 2d 497, 515 (S.D. Tex. 2003). However, such a failure does not necessarily dictate remand for further review. *Id*. When reviewing claims of *procedural* error in Social Security disability cases, courts in the Fifth Circuit have applied what amounts to a "harmless error" standard of review. "[R]eversal and remand is not warranted by the mere fact that the ALJ erred procedurally." *Esparza v. Berryhill*, 2017 WL 6513634 (N.D. Tex. Nov. 27, 2017). Instead, an ALJ's decision should be reversed and the case remanded only if the procedural error affected the substantial rights of a party. "[P]rocedural improprieties . . . will . . . constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988). "Remand is required only when there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error." *Esparza, supra* at *6 (citations omitted).

V.
MERITS

A.  The ALJ Procedurally Erred in Evaluating the
Treating Source Medical Opinions in the Record

Plaintiff alleges the ALJ failed to give proper weight to the opinions of Dr. Bidwell concerning plaintiff's physical limitations and work-related capabilities expressed in the July 8, 2014 "Physical Medical Source Statement" he completed at plaintiff's behest. Plaintiff asserts (1) that although the ALJ did not specifically state what weight he gave to Dr. Bidwell's opinion, he apparently gave it "little weight," if any; (2) that prior to rejecting or discounting Dr. Bidwell's treating source opinion, the ALJ

was required to conduct, and include in his decision, a detailed analysis of the six (6) factors set forth under 20 C.F.R. § 404.1527; (3) that the ALJ failed to consider each of the factors in his decision and such failure constituted reversible legal error; and (4) that plaintiff was prejudiced by the ALJ's procedural error because, if the ALJ had considered the factors as required, he may have given greater weight to some of Dr. Bidwell's opinions and, if the ALJ adopted even one of the physical limitations Dr. Bidwell opined plaintiff endures, then the VE would have found plaintiff could not perform her PRW, resulting in the ALJ finding her disabled.  (ECF #14 at 18).

A "medical opinion" is a statement from an acceptable medical source that reflects judgments about the nature and severity of a disability claimant's impairments.  20 C.F.R. § 404.1527(a)(1). Medical opinions often address a claimant's symptoms, diagnosis and prognosis, what a claimant can still do despite impairments, and a claimant's physical or mental restrictions.  *Id*.  Dr. Bidwell's July 8, 2014 "Physical Medical Source Statement" qualifies as a medical opinion under the regulations.

A "treating source" is an "acceptable medical source" who has provided a claimant with medical treatment or evaluation <u>and</u> who has had an "ongoing treatment relationship" with the claimant with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the claimant's medical condition.  20 C.F.R. § 404.1527(a)(2).  Dr. Bidwell examined and treated plaintiff on six (6) occasions prior to completing the form statement, one (1) time contemporaneously with the completion of the form, and two (2) times after completing the form.  Dr. Bidwell qualifies as a treating source under the regulations.

In determining whether a claimant is disabled for the purpose of awarding disability benefits, the medical opinion of a treating source is generally entitled to considerable weight because of the source's familiarity with the claimant's impairments, treatments and responses.  *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995).  In fact, the medical opinion of a treating source on the issues of the

"nature and severity" of a claimant's impairment will be given "controlling weight" in a disability evaluation <u>if</u> the medical opinion is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques, <u>and</u> (2) is not inconsistent with the other substantial evidence in the claimant's case record.  20 C.F.R. § 404.1527(c)(2); *see Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir. 1995).

An ALJ may, however, "reject" the medical opinion of a treating source – that is, give the treating source medical opinion "less weight, little weight, or even no weight," *Perez v. Barnhart*, 415 F. 3d 457, 465-66 (5th Cir. 2005) – when (1) the evidence supports a contrary conclusion, <u>and</u> (2) good cause is shown – such as when a treating source's statements or evidence is (a) brief and conclusory, (b) unsupported by a medically acceptable clinical, laboratory or diagnostic techniques, or (c) otherwise unsupported by the evidence.  *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000).  However, if declining to give a treating source medical opinion "controlling weight," an ALJ must consider the following factors set forth under 20 C.F.R. § 404.1527(c) in determining the weight to give to that treating source medical opinion:

> – the treating source's length of treatment of the claimant;

> – the treating sources's frequency of examination;

> – the nature and extent of the treatment relationship;

> – the support of the treating source's opinion afforded by the medical evidence of record;

> – the consistency of the opinion with the record as a whole; and

> – the specialization, if any, of the treating source.

*Id*. at 455.  If there are controverting medical opinions from *treating <u>or</u> examining* sources competing with the treating source opinion the ALJ is declining to give controlling weight, *i.e.*, if the ALJ is not rejecting the <u>sole</u> relevant medical opinion of a treating source in the record, then the ALJ need <u>not</u> set forth his detailed analysis of the section 404.1527(c) factors in his decision with regard to the treating

source medical opinion receiving less than controlling weight. *See Qualls v. Astrue*, 339 Fed. Appx. 461, 467 (5th Cir. 2009). A one-time consultative examination wherein the examining source simply tracks a claimant's symptoms at the moment of the examination and does not address or explain how a claimant's medical conditions may or may not result in work-related limitations, does not amount to a competing "controverting medical opinion." *Cf. Beltran v. Berryhill*, 2017 WL 4167513 (N.D. Tex. September 20, 2017); *Osborn v. Berryhill*, 2017 WL 2312910 (N.D. Tex. May 11, 2017); *Wilkerson v. Berryhill*, 2017 WL 1091601 (N.D. Tex. March 23, 2017).

Regardless of the weight given a treating source's medical opinion as to what a claimant can still do despite impairments and/or any restrictions as a result of said impairments, it is still the ALJ's ultimate responsibility to evaluate a claimant's RFC based on the record as a whole, and the ALJ's "sole responsibility for determining a claimant's disability status." *Newton*, 209 F.3d at 455; *see Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990) (opinions from medical sources that a claimant is "disabled" or "unable to work" are "opinions on issues reserved to the Commissioner because they are administrative findings dispositive of a case" and are not treated as "medical opinions.").

As noted above, plaintiff filed an application for disability benefits on July 25, 2012 alleging she became disabled and unable to work on July 15, 2010 due to degenerative disc disease of the lumbar spine, migraine headaches, high blood pressure, anxiety and depression. Plaintiff presented to Dr. Bidwell, a family medicine practitioner, from August 22, 2012 to January 7, 2014 with complaints of "aching" pain in her head, left knee, joints, lower back and arms, depression, hypertension, and pre-diabetic testing. Dr. Bidwell's diagnostic impressions at these examinations included hypertension, hyperlipidemia, arthralgia, depression, and impaired fasting glucose, with the problem typically assessed as "unchanged." Treatment included recommendations to take a "[g]lucosamine supplement and Tylenol as needed," prescription of a pain reliever, "gentle massage, low heat, and OTC pain relief

cream to affected area," increasing the strength and dosage of the prescribed pain reliever, prescribing an anti-depressant, and continuing plaintiff on her current medications.

On July 8, 2014, the date plaintiff presented Dr. Bidwell with the form "Physical Medical Source Statement" to complete, plaintiff presented with complaints of "sharp" pain in her lower back, numbness and a burning sensation in her feet, depression and joint pain. Dr. Bidwell's diagnostic impression at this exam included "backpain, lumbar, chronic," assessed as "unchanged." Treatment included prescription of a muscle relaxant. On September 23, 2014, plaintiff complained of "aching" pain in her arms, and on April 2, 2015, plaintiff again complained of "sharp" pain in her back, hips, legs and joints. Dr. Bidwell's diagnostic impressions at these examinations included arthralgia "unchanged" and hypertension, and treatment included recommendations for "gentle massage, low heat and OTC pain relief cream to affected area."

In his July 8, 2014 "Physical Medical Source Statement, " Dr. Bidwell opined plaintiff:

1. was severely limited or totally precluded by her medical impairments from physically performing most aspects of exertional functions and work-related activities (*i.e.*, she was limited, *inter alia,* to lifting < 10 pounds, standing/walking < 2 hours in an 8-hour workday, walking < 10 feet, and sitting < 2 hours in an 8-hour workday);

2. was precluded from activities by her "severe" and "frequent" pain;

3. would not be able to work an 8-hour job without significant accommodations and/or frequent unscheduled days off;

4. would be absent from work more than 3 days a month as a result of being significantly impaired; and

5. had a "poor/guarded" prognosis. (Tr. 687-88).

Dr. Bidwell's medical opinion was the only treating source medical opinion in the record addressing plaintiff's physical capabilities and work-related limitations.

In his decision, the ALJ:

1.    acknowledged Dr. Bidwell's July 8, 2014 "Physical Medical Source Statement," restated the doctor's opinions regarding plaintiff's physical limitations and her inability to work an 8-hour job, and his opinion that plaintiff "would be absent from work consistently more than 3 days a month;"

2.    cited the provision of 20 CFR § 404.1527 that "a treating source opinion is to be given controlling weight if it is well supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence of record;"

3.    found "Dr. Bidwell's records do not support his opinion" for the following reasons:

    a.    almost all of Dr. Bidwell's examinations of plaintiff showed generally normal musculoskeletal findings, no neurological deficits, and normal gait, muscle strength and tone, with the exception of a slightly slow gait finding starting in March 2013;

    b.    Dr. Bidwell never recommended plaintiff use an assistive device to ambulate;

    c.    Dr. Bidwell's treatment notes after his "Physical Medical Source Statement" continued to reflect plaintiff had no neurological deficits and normal muscle strength/tone; and

    d.    Dr. Bidwell's treatment notes reflected plaintiff had reported her pain was well controlled most of the time on medications.

4.    stated he carefully considered Dr. Bidwell's opinion but that it could not be given "great weight" because it is:

    a.    in conflict with Dr. Bidwell's own treatment records;

    b.    not well supported by medically acceptable clinical and laboratory techniques; and

    c.    inconsistent with the other substantial evidence as noted above.

(Tr. 27-28).

The ALJ did not state how much weight he afforded Dr. Bidwell's opinions regarding plaintiff's limitations other than to say his opinions "cannot be given great weight." (Tr. 28). Although stating

he considered the opinion evidence "in accordance with the requirements of 20 CFR § 404.1527" and various SSRs, the ALJ did not mention or specifically address the factors set forth in subsection 404.1527(c) in his decision.

While it is unclear the exact amount of weight afforded Dr. Bidwell's opinions, the undersigned agrees with plaintiff that it appears the ALJ gave very little, if any, weight to the doctor's opinions as to plaintiff's physical capabilities and work-related limitations. Dr. Bidwell opined plaintiff's medical impairments cause such extensive, debilitating limitations that she is basically precluded from all work-related functions. The ALJ, however, found plaintiff retains the RFC to perform light work limited only by avoiding work above shoulder level. Thus, the ALJ rejected Dr. Bidwell's opinions in the "Physicial Medical Source Statement." Because the ALJ gave the sole treating source's opinions less than controlling weight, he was required to conduct the detailed analysis of the section 404.1527 factors. *Cf. Coljohn v. Berryhill*, 2017 WL 2455962, at *7 (N.D. Tex. May 16, 2017)

Fifth Circuit case law allows an ALJ to bypass the required factor analysis *only* when there is "reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist." *Qualls*, 339 Fed.Appx. at 466. The one-time examining source statement by Dr. Burgesser did not constitute a competing "controverting medical opinion" excusing the ALJ from conducting the required factor analysis. Although the ALJ was not required to mechanically list each factor and his analysis thereof in his decision, consideration of each of the factors is necessary. Here, it is not clear from the ALJ's decision that each factor was applied, discussed, or considered. *Cf. Frierson-Simiyu v. Berryhill*, 2017 WL 6612950 (N.D. Tex. Nov. 8, 2017). Consequently, the undersigned finds, in conformity with the numerous, recent opinions in the Northern District of Texas addressing this issue, that the ALJ was required to analyze the factors in his decision and his failure to do so constituted procedural error.

B.  The ALJ's Procedural Error Resulted in Harm to Plaintiff

"Failure to adhere to the procedures proscribed by the Social Security regulations is sufficient ground for reversal and remand of an administrative decision." *Alejandro v. Barnhart*, 290 F.Supp.2d 497, 515 (S.D. Tex. 2003) (*citing Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987)).  However, such a failure does not necessarily dictate a remand for further review.  The Court may decline to reverse and remand on procedural grounds when it is clear that the procedural error did not compromise the decision-making process.  As a logical matter, it makes little sense to reverse and remand for technical failings that do not influence the outcome.  *Id.*  Therefore, the Court may affirm despite the procedural error if the plaintiff was not prejudiced due to the error as the requisite procedures exist solely to guarantee an accurate assessment of the evidence.  *Id.*  A plaintiff may establish prejudice, however, by showing "there is a realistic probability that the ALJ would have reached a different conclusion absent the procedural error" in question.  *Esparza v. Berryhill*, 2017 WL 6513634 (N.D. Tex. November 27, 2017) (quoting *Ware v. Colvin*, 2013 WL 3829472, at *4 (N.D. Tex. July 24, 2013)).

The undersigned finds plaintiff was prejudiced by the ALJ's procedural error of failing to include, in his decision, an analysis of each of the section 404.1527(c) factors in determining the weight to be given Dr. Bidwell's opinion.  The ALJ's stated reasons for not giving Dr. Bidwell's opinions as to plaintiff's limitations "great weight" were that Dr. Bidwell's own treatment records did not support and/or were in conflict with his opinions, and that the opinions were not well supported by medically acceptable clinical and laboratory techniques, and were inconsistent with other substantial evidence as previously discussed in his decision. The Court noted previously that it appears the ALJ gave little to no weight to Dr. Bidwell's medical opinions on plaintiff's limitations. However, due to the procedural error in failing to perform a detailed section 404.1527(c) analysis, the ALJ put this Court in the position of guessing his reasoning for the RFC determination.  Although it could be argued that the ALJ

addressed some of the factors in a round-about fashion and that others could be inferred from a review of the record, the Court is still left to substitute its own judgment in place of the regulation's proscribed analysis of the factors by the ALJ.

Because Dr. Bidwell found severe work-related limitations that would result in a finding of disability, the failure to properly consider his opinion was not harmless. Stated another way, if the ALJ had accorded more weight to Dr. Bidwell's opinions, it is possible he could have found plaintiff disabled. Because the ALJ did not include a complete and detailed analysis of each of the section 404.1527(c) factors before according Dr. Bidwell's opinion less than controlling weight, "there is a realistic probability that the ALJ would have reached a different conclusion absent the procedural error" in question. *See Esparza*, 2017 WL 6513634 at *6. The ALJ's procedural error under the regulations could have compromised his decision-making process or influenced the outcome of his decision. Consequently, the Court finds the ALJ's failure to follow the regulations in giving the opinions of the sole treating source (Dr. Bidwell) controlling weight resulted in harm to plaintiff. On remand, the ALJ shall perform the required six-factor analysis of section 404.1527(c).

VI.

RECOMMENDATION

It is the recommendation of the undersigned to the United States Senior District Judge that the decision of the Commissioner finding plaintiff DEBORAH M. STAPLETON not disabled and not entitled to disability benefits be REVERSED and the case REMANDED for further administrative review consistent with these findings and conclusions.

VII.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these findings, conclusions and recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED March 7, 2018.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE


**\* NOTICE OF RIGHT TO OBJECT \***

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).